IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **LONE STAR FUND V (U.S.), L.P., and** § | | |
| **LSF5 BOND HOLDINGS, LLC**, § | | |
| § | | |
| Plaintiffs, § | | |
| § | | |
| v. § | Civil Action No. **3:08-CV-0261-L** | |
| § | | |
| **BARCLAYS BANK PLC and** § | | |
| **BARCLAYS CAPITAL INC.,** § | | |
| § | | |
| Defendants. § | | |

**MEMORANDUM OPINION AND ORDER**

Before the court are: (1) Plaintiffs' Motion to Remand or, in the Alternative, Motion for Discretionary Abstention and/or Equitable Remand, filed March 13, 2008; and (2) Defendants Barclays Bank PLC and Barclays Capital Inc.'s Motion to Dismiss, filed February 21, 2008. After carefully considering the motions, briefs, record, and applicable law, the court **denies** Plaintiffs' Motion to Remand or, in the Alternative, Motion for Discretionary Abstention and/or Equitable Remand and **grants** Defendants Barclays Bank PLC and Barclays Capital Inc.'s Motion to Dismiss.

**I.  Procedural and Factual Background**

Plaintiffs Lone Star Fund V (U.S.), L.P. ("Lone Star Fund") and LSF5 Bond Holdings, LLC ("LSF5") (collectively, "Lone Star" or "Plaintiffs") filed their Original Petition against Defendants Barclays Bank PLC ("Barclays PLC") and Barclays Capital, Inc. ("Barclays Capital") (collectively, "Barclays" or "Defendants") in the 95th Judicial District Court, Dallas County, Texas on January 14, 2008. Defendants removed the case to this court on February 13, 2008, arguing that the court has jurisdiction over the case pursuant to 28 U.S.C. § 1334(b) and that removal was proper pursuant

to 28 U.S.C. § 1452(a) because the case is "related to" a pending Chapter 11 bankruptcy proceeding. Defendants argue in the alternative that removal is proper pursuant to the Supremacy Clause of the United States Constitution because a state action will deny them a substantive federal right and that there is diversity jurisdiction pursuant to 28 U.S.C. § 1441(a).

Shortly after removing the case to this court, on February 21, 2008, Defendants moved to dismiss Plaintiffs' complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and because Plaintiff Lone Star Fund lacks standing. Plaintiffs then moved to remand the case to state court, or in the alternative, for discretionary abstention or equitable remand. Plaintiffs filed their Amended Complaint, the live pleading, on March 26, 2008.

Plaintiffs allege that Defendants have engaged in a $60 million fraud relating to mortgage pass-through certificates (the "Securities"). Plaintiffs contend that Defendants made representations and assurances that were false and that violated the terms of the associated offering documents. Plaintiff LSF5 allegedly purchased $60 million in Securities from Barclays. Plaintiffs contend that shortly after the purchase, they learned that a number of the mortgage loans underlying the Securities were delinquent as of the offering dates. They assert that 5% of the loans of Defendants' "BR2" offering and 15.7% of the loans of Defendants' "BR3" offering were delinquent. Plaintiffs contend that they would not have bought the Securities had they known that these loans were delinquent. They assert that Defendants used the BR2 and BR3 offerings to unload troubled mortgage loans.

In Plaintiffs' Amended Complaint, they assert the following claims: violation of the Texas Securities Act, aiding and abetting violation of the Texas Securities Act, control person liability for violation of the Texas Securities Act, violation of section 27.01 of the Texas Business and

Commerce Code, aiding and abetting violation of section 27.01, common law fraud, negligent misrepresentation, violation of section 12(a)(2) of the Securities Act of 1933, violation of section 11 of the Securities Act of 1933, control person liability pursuant to section 15 of the Securities Act of 1933, and fraudulent inducement. Plaintiffs assert that they are entitled to actual damages, exemplary damages, rescission, attorney's fees, prejudgment and postjudgment interest, and other damages.

## II.     Motion to Remand

### A.     Legal Standard

A federal court has subject matter jurisdiction over cases "arising under" the Constitution, laws, or treaties of the United States, or in cases where the matter in controversy exceeds $75,000, exclusive of interest and costs, and diversity of citizenship exists between the parties. 28 U.S.C. §§ 1331, 1332. Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim. *See Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Absent jurisdiction conferred by statute or the Constitution, they lack the power to adjudicate claims and must dismiss an action if subject matter jurisdiction is lacking. *Id.; Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)). A federal court has an independent duty, at any level of the proceedings, to determine whether it properly has subject matter jurisdiction over a case. *See Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) ("federal court may raise subject matter jurisdiction *sua sponte*").

In cases that are removed, any doubts as to the propriety of the removal should be construed strictly in favor of remand. *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). "The burden of establishing subject matter jurisdiction in federal court rests on the party seeking to invoke it." *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). Accordingly, if a case is removed to federal court, the defendant has the burden of establishing subject matter jurisdiction; if a case is initially filed in federal court, the burden rests with the plaintiff to establish that the case "arises under" federal law, or that diversity exists and that the amount in controversy exceeds the jurisdictional threshold.

**B.     Analysis**

Plaintiffs argue that remand is appropriate because this case is not "related to" a pending bankruptcy case and there is no diversity jurisdiction. They also argue, in the alternative, that discretionary abstention or equitable remand is appropriate. Defendants respond that this case is related to the bankruptcy proceedings of New Century Capital Corporation ("New Century"), the entity from which Barclays PLC purchased the underlying mortgage loans. They also respond that there is diversity jurisdiction in this case, and that Plaintiffs have failed to provide authority to support their arguments for discretionary abstention and equitable remand.

**1.     "Related to" Jurisdiction**

Plaintiffs argue that this case is not related to New Century's bankruptcy proceeding pending in Wilmington, Delaware ("the Bankruptcy Case") pursuant to 28 U.S.C. § 1334(b). They contend that the outcome of this case will have no direct or indirect effect on New Century's bankruptcy estate. Defendants respond that this case does have an effect on the Bankruptcy Case because the contract between Barclays PLC and New Century, the Mortgage Loan Purchase Agreement

("MLPA"), included provisions that New Century was required to indemnify and hold Defendants harmless against all losses, claims, damages, and liabilities, including Plaintiffs' rescission claims against Defendants in this case. Defendants argue that Barclays PLC filed a claim in the Bankruptcy Case even before this case was filed based upon other claims it had against New Century.

Section 1334(b) provides:

> Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than district courts, the district courts shall have original but not exclusive jurisdiction over all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334(b). The standard for "related to" jurisdiction is construed broadly. "We have read this jurisdictional grant broadly, stated that the test for whether a proceeding properly invokes federal 'related to' jurisdiction is whether the outcome of the proceeding could *conceivably* affect that estate being administered in bankruptcy." *In re TXNB Internal Case*, 483 F.3d 292, 298 (5th Cir.), *cert. denied*, 128 S. Ct. 613 (2007) (emphasis added and citation omitted). The standard does not require certainty; "an action is 'related to' bankruptcy if the outcome could alter, positively or negatively, the debtor's rights, liabilities, options, or freedom of action or could influence the administration of the bankruptcy estate." *Id*. (citation omitted).

Plaintiffs contend that this case has no conceivable effect on the Bankruptcy Case because if Defendants are entitled to a recovery from the bankruptcy estate, it will be determined by a mathematical formula. This formula, the "EPD/Breach Claim Protocol," allegedly determines each claim against New Century based upon the age of the loan and the amount of unpaid principal balance of the loan portfolio as of August 2007. Pls.' App. A77-A81, A268-A272. Because of this

protocol, Plaintiffs argue that this case is not "related to" the Bankruptcy Case under section 1334(b).

Defendants respond that the "related to" standard is an extremely liberal test and that Plaintiffs' reference to a proposed liquidation plan is not enough to justify remand. They argue that removal jurisdiction is determined at the time of removal, and Plaintiffs cannot rely upon the proposed liquidation plan that was filed after the case was removed. Defendants argue that even if the liquidation plan is confirmed, this case will still have an effect on the bankruptcy estate, justifying "related to" jurisdiction. This is because not all of Defendants' claims against New Century will be covered by the EPD/Breach Claim Protocol, because additional claims by Defendants might affect the rights of other claimants, because Defendants' claims against New Century for indemnification are for claims other than federal securities law, and because Defendants also have certain contribution claims against New Century, which are not subject to the protocol. For these reasons, Defendants argue that section 1334(b) jurisdiction over this case is proper.

The court determines that pursuant to the liberal standard of section 1334(b), there is subject matter over Plaintiffs' claims because they are related to the Bankruptcy Case. Plaintiffs do not respond to Defendants' argument that the court is to look to the time of removal to determine if subject matter jurisdiction exists. *In re Bissonnet Invs. LLC*, 320 F.3d 520, 525 (5th Cir. 2003) (citation omitted). This case was removed on February 13, 2008; the proposed liquidation plan was filed on February 27, 2007. Pls.' App. A166; *see also* Pls.' Mot. 6. At the time of removal, there was no protocol, and Defendants' rights with respect to New Century were set forth in the MLPA, which includes provisions that require New Century to indemnify Defendants for certain claims that arise from its sale of loans to Defendants.

**Memorandum Opinion and Order - Page 6**

Even if the court were to look at the proposed liquidation plan, Plaintiffs fail to establish how all of Defendants' claims against New Century would be included in the protocol. Defendants have pointed out how certain claims are excluded from the protocol and this argument was not rebutted in the reply. Accordingly, the court determines that under the extremely broad standard of section 1334(b), the claims in the action could conceivably affect the Bankruptcy Case, thus it is "related to" that proceeding under section 1334(b) and this court has subject matter jurisdiction.

Because the court concludes that this case is related to a bankruptcy proceeding, and subject matter jurisdiction is appropriate under section 1334(b), the court does not reach the alternative arguments that diversity jurisdiction does not exist or that the Supremacy Clause of the United States Constitution does not provide a basis for jurisdiction. The court will, however, turn to Plaintiffs' arguments that discretionary abstention or equitable remand are appropriate in this case.

### 2. Discretionary Abstention and Equitable Remand

Plaintiffs have also moved in the alternative, if the court finds that it has subject matter jurisdiction, for discretionary abstention or equitable remand of the case to state court. They contend that remand is justified by 28 U.S.C. §§ 1334(c)(1) or 1452(b). Defendants respond that Plaintiffs have failed to meet their burden of showing that the court should abstain from exercising its jurisdiction.

Section 1334(c)(1) provides:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1). Section 1452(b) provides that in a case removed pursuant to 1452(a), "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b).

Courts have wide discretion in deciding whether to abstain pursuant to section 1334(c)(1). *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987). A variety of factors may be considered when making the determination whether to abstain or equitably remand a case. *In re Doctors Hosp. 1997, L.P.*, 351 B.R. 813, 847 (Bankr. S.D. Tex. 2006). These factors include:

> (1) The effect or lack thereof on the efficient administration of the estate if the Court recommends remand or abstention;
>
> (2) Extent to which state laws predominate over bankruptcy issues;
>
> (3) Difficult or unsettled nature of applicable law;
>
> (4) Presence of related proceeding commenced in state court or other nonbankruptcy proceeding;
>
> (5) Jurisdictional basis, if any, other than § 1334;
>
> (6) Degree of relatedness or remoteness of proceeding to main bankruptcy case;
>
> (7) The substance rather than the form of an asserted core proceeding;
>
> (8) The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
>
> (9) The burden of the bankruptcy court's docket;
>
> (10) The likelihood that the commencement of proceedings in bankruptcy court involves forum shopping by one of the parties;
>
> (11) The existence of a right to a jury trial;

(12) The presence in the proceeding of nondebtor parties;

(13) Comity; and

(14) The possibility of prejudice to other parties in the action.

*Id*. (internal brackets omitted).

Plaintiffs contend that these factors weigh in favor of remand, that the state court can consider and rule on its federal claims, and therefore abstention or remand is appropriate. Defendants respond that remand is inappropriate because these statutes are aimed at cases involving primarily state claims and that this court has jurisdiction over Plaintiffs' federal securities law claims. Defendants also argue that remand is inappropriate because it will deprive them of rights provided by the Private Securities Litigation Reform Act (the "PSLRA"), such as the right to stay discovery. Defendants further argue that this court is best situated to consider Plaintiffs' securities claims and to consider issues that arise under the PSLRA.

The court agrees that these statutes appear to be aimed at cases involving primarily state claims that are removed to federal court because of a tangential relationship to a federal bankruptcy proceeding. Factors two, four, and eight look to the state claims, and factors six, seven, and twelve consider the nature of the bankruptcy claims. The court has already determined that this case is related to the Bankruptcy Case, though the debtor is not a party to this case. The court also notes that there are more than state claims; Plaintiffs have also brought several claims pursuant to the federal securities laws. Accordingly, the court has an independent basis for jurisdiction beyond the "related to" jurisdiction, and taken as a whole, it determines that these factors do not weigh in favor of abstention or remand.

The court has considered each of the factors set out above, the claims pleaded by Plaintiffs, and the arguments of the parties. Plaintiffs assert both state and federal securities law claims, and they have not cited any case authority supporting their contention that the court should remand federal securities law claims. The court determines therefore that it will not abstain or equitably remand this case. There are federal claims, the court has "related to" bankruptcy jurisdiction over this case, and there is no real prejudice to Plaintiffs. That they will not litigate their claims in their chosen forum does not constitute legal prejudice. Plaintiffs will be able to fully present and litigate their claims in this forum. Accordingly, the court **denies** Plaintiffs' Motion to Remand or, in the Alternative, Motion for Discretionary Abstention and/or Equitable Remand.

### III.  Motion to Dismiss

#### A.  Legal Standard

To defeat a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, -- U.S. --, 127 S. Ct. 1955, 1974 (2007). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F. 3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area*

*Rapid Transit*, 369 F. 3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). A court, however, is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

### B. Analysis

Defendants move to dismiss Plaintiffs' claims for failure to state a claim upon which relief can be granted. They contend that Plaintiffs' complaint fails to meet the particularity standard of Rule 9(b) of the Federal Rules of Civil Procedure, that Plaintiffs have failed to plead a material misrepresentation made by Defendants, that their claims are truly contract claims and are improperly

cast as tort claims, and that the aiding and abetting claims are without merit. Defendants also argue that Plaintiff Lone Star Fund lacks standing because it did not purchase any Securities.

Plaintiffs respond that they have stated a material misrepresentation, that they are not bound by the limitation of remedy provisions in the offering documents, and that they have pleaded their claims with the particularity required by Rule 9(b). They also argue that they have alleged aiding and abetting claims and that they have stated a claim for fraud and negligent misrepresentation.

### 1. Effect of Amendment

Before reaching the merits of Defendants' claims, the court considers whether Defendants' motion should be denied as moot because Plaintiffs amended their complaint after the motion to dismiss was filed. As Wright, Miller, and Kane have noted:

> Defendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court may simply consider the motion as being addressed to the amended pleading. . . . To hold otherwise would be to exalt form over substance.

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 6 Fed. Prac. & Proc. Civ. 2d § 1476 (2008). Defendants and Plaintiffs appear to consider the motion pending, as Plaintiffs responded and Defendants replied after the amended pleading was filed. Therefore, the court considers Defendants' motion in light of the live pleading, the Amended Complaint.

### 2. Material Misrepresentation

The court considers first whether Plaintiffs have pleaded a material misrepresentation. Plaintiffs' claims are predicated upon Defendants' alleged misrepresentation that there were no delinquent loans in the BR2 and BR3 pools of mortgages when Plaintiffs bought their Securities or are claims of aiding and abetting. Amend. Compl. ¶¶ 76, 83, 97, 105, 113, 120, 129, 140, 154.

Defendants argue that no misrepresentation was made because the offering documents also included language that provided that if delinquent loans were included, the sole remedy was for Barclays PLC to repurchase or substitute the mortgage loans.

Plaintiffs allege that LSF5 purchased certificates in two trusts, the 2007 BR2 Securitized Asset Backed Receivables LLC Trust 2007-BR2 (the "BR2 Trust") and the 2007-BR3 Securitized Asset Backed Receivables LLC Trust 2007-BR3 (the "BR3 Trust"). Each Trust was formed pursuant to a Pooling and Service Agreement ("PSA"). Pursuant to the PSAs, Barclays created pools of mortgage loans and transferred them to its subsidiary, the Securitized Asset Backed Receivables LLC ("SABR"). SABR transferred the pool of mortgage loans to the Trusts, which issued mortgage-backed securities in the form of certificates, or Securities.

Plaintiffs point to three prospectuses: (1) the December 11, 2006 Prospectus relating to both the BR2 and BR3 offerings (the "Prospectus"); (2) the May 16, 2007 Prospectus Supplement relating to the BR2 offering (the "BR2 Supplemental Prospectus"); and (3) the June 11, 2007 Prospectus Supplement relating to the BR3 offering (the "BR3 Supplemental Prospectus"). The BR2 and BR3 Supplemental Prospectuses include the following statement:

> Barclays will make representations and warranties with respect to each mortgage loan [New Century] sold to the sponsor as of the closing date, including, but not limited to:
>
> (1) As of the transfer servicing date, except with respect to the Delinquent mortgage loans described under "*The Mortgage Loan Pool – General*" in this prospectus supplement, no payment required under the mortgage loan is 30 days or more Delinquent nor has any payment under the mortgage loan been 30 days or more Delinquent at any time since the origination of the mortgage loan.

**Memorandum Opinion and Order - Page 13**

Defs.' App. 92 (BR2 Supplemental Prospectus); *see also id*. at 466 (BR3 Supplemental Prospectus). A Representation and Warranties Agreement ("RWA") was also signed by Barclays for each Trust, which included an exhibit that set forth the representations and warranties made by Barclays PLC for the mortgage loans in each pool. *See id*. at 386-392 (BR2); 776-780 (BR3). Included in these exhibits to the RWAs is the following language:

> Payments Current. (i) All payments required to be made up to the Closing Date for the Mortgage Loan under the terms of the Mortgage Note, other than payment not yet 30 days delinquent, have been made and credited, (ii) no payment required under the Mortgage Loan has been 30 days or more delinquent at any time since the origination of the Mortgage Loan, and (iii) the first Monthly Payment was made with respect to the Mortgage Loan on its related Due Date or within the grace period, all in accordance with the terms of the related Mortgage Note.

*Id*. at 386 (BR2); *see also id.* at 776 (BR3). Plaintiffs also allege that Defendants touted the due diligence they had performed on the underlying mortgage loan pools in soliciting them to buy the Securities.

Plaintiffs contend that they relied upon Barclays' representations that it conducted due diligence on the loans in the BR2 and BR3 Trusts and that no loan delinquencies existed in the loan pools upon the closing of the offerings. They argue that these were material misstatements. Specifically, Plaintiffs assert that Barclays knew at the time of the offerings that 290 loans, or 5.6% of the BR2 loan pool, and 848 loans, or 15.7% of the BR3 loan pool, had been delinquent for thirty days or more prior to the closing date. Plaintiff LSF5 purchased approximately $45 million in BR2 Securities in May 2007 and $15.8 million in BR3 Securities in June 2007.

Defendants point out that crucial language in the offering documents was omitted by Plaintiffs in their pleading. The Prospectus Supplements list fifteen representation and warranties

with respect to the pool of mortgage loans and then sets forth additional language that they argue modifies the representations and warranties. Defs.' App. 92-94 (BR2), 466-68 (BR3). This section concludes:

> The obligations of Barclays to cure such breach or to substitute or purchase the applicable mortgage loan will constitute the sole remedies respecting a material breach of any such representation or warranty to the holders of the [Securities], the servicer, the trustee, the depositor and any of its affiliates.

*Id.* at 95(BR2), 469 (BR3). Defendants points out that this same "sole remedy" language is included in the RWAs:

> It is understood and agreed that the obligation of [Barclays PLC] set forth in Section 3(a) to purchase or substitute for a New Century Mortgage Loan in breach of a representation or warranty contained in Section 2 constitutes the sole remedy of the Depositor or any other person or entity with respect to such breach.

*Id.* at 382 (BR2), 772 (BR3).

Defendants argue that Plaintiffs have failed to state a claim because there is no allegation that Barclays failed to repurchase or substitute any loan as required by the offering documents. They contend that these documents all defined the scope of the representations made by Barclays, representations that were limited by Barclays obligation to repurchase or substitute loans if there were any delinquent loans. Defendants argue that if anything, the statements Plaintiffs point to are promises of future performance and therefore cannot be material misrepresentations. They further contend that as sophisticated investors, Plaintiffs had a duty to read the offering documents and that they are bound by all of the terms included in them.

Plaintiffs respond that Defendants made misrepresentations because there were delinquent loans in the Trusts at the time they purchased the Securities. They argue that these

misrepresentations were material because they were important to their decision to purchase the Securities. They contend that the limitations of remedy Defendants point to are not part of the representations made to them as potential investors, and that they are not parties to any of the agreements. They also contend that the limitations of remedy are unenforceable as a matter of law.

Plaintiffs argue that the "sole remedy" language cited by Defendants violates federal and Texas securities laws, which prevent an investor from waiving fraud claims. *See* 15 U.S.C. § 77n; Tex. Sec. Act art. 581 § 33L. They also contend that they are not bound by the representations made in the RWAs, because they were not parties to those agreements made between Barclays PLC and SABR.

Defendants respond that the "sole remedy" language was part and parcel of the warranties and representations and that this limitation was even highlighted in the prospectuses. Defs.' App. 21 (BR2), 414 (BR3). They argue that Plaintiffs cannot embrace certain representations and discard others and that buyers of the Securities are bound by all of the terms. They contend that Plaintiffs, as investors, are bound by the terms of the contract set forth in the prospectus. *See Mimbre v. New Alliance Bancshares, Inc.*, 206 Fed. Appx. 63, 2006 WL 3373159 (2d Cir. 2006).

Defendants further respond that the anti-waiver provisions on their face do not apply in this case. The federal statute provides: "Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the Commission shall be void." 15 U.S.C. § 77n; *see also* Tex. Rev. Civ. Stat. art. 581-33(L) ("Waivers Void. A condition, stipulation, or provision binding a buyer or seller of a security or a purchaser of services rendered by an investment adviser or investment adviser representative to waive compliance with a provision of this Act or a rule or order or requirement

**Memorandum Opinion and Order - Page 16**

hereunder is void."). Barclays contend that these provisions require complete disclosure and such disclosure was made in the offering documents. They argue that there is no misrepresentation, not that Plaintiffs waived the right to assert any misrepresentation.

With respect to Plaintiffs' argument that they cannot be bound by agreements to which they were not a party, Defendants respond that they have ignored the prospectuses, which clearly included the representations that applied to the purchasers of the Securities. Barclays points out that Plaintiffs have even pleaded that they invoked the repurchase or substitute provision with respect to the delinquent loans. Compl. ¶¶ 63-68.

Plaintiffs sought and were granted leave to file a surreply. Plaintiffs further argue that Barclays has admitted that it offered securities that contain materially false and misleading information but that Defendants' position would allow a seller of securities to absolve itself of fraud by providing a remedy in the offering documents. They contend that the anti-waiver provisions apply both to substantive and procedural provisions of the federal and state securities laws. They argue that Defendants made misrepresentations by failing to disclose that there were delinquent loans, and that they have made misrepresentations about their willingness to repurchase or substitute delinquent loans.

In their response to the surreply, Defendants argue that the offering documents were structured the way they were because each Trust contained thousands of loans worth more than $1 billion and that were originated by third parties. They contend that in the offering documents they made two representations, neither of which has been breached: (1) the loans were or (2) would be made to be not delinquent so that the pools would contain only nondelinquent loans. Defendants point out that Plaintiffs have failed to explain how they understood the repurchase or substitute

language. They argue that accepting Plaintiffs' argument would require a rewriting of the Trust documents or Plaintiffs' pleading. Defendants argue that the anti-waiver provision arguments are irrelevant because Plaintiffs have failed to plead any misrepresentation.

The court has carefully considered the parties' arguments, the offering documents, and the cases cited by the parties. None of the case law cited by the parties is directly on point, and the court must decide fundamentally whether the "repurchase or substitute" language limits the scope of the warranties and representations made by Barclays to potential purchasers of the Securities or if it provides only a remedy for misrepresentations made in the offering documents. The court concludes that Defendants' reading of the offering documents is correct and that Plaintiffs, sophisticated investors, have failed to explain why they are not bound by the scope limitations of the representations. Defendants' argument that they have only represented that the loans are – or will be made – compliant is persuasive given the structure of the Prospectus Supplements, which set out certain representations and warranties for the mortgage loans that will be pooled, and then contain language that makes clear that specific actions will be taken if there are delinquent loans.

Because the court considers the "repurchase or substitute" language to be part of the representations made by Defendants, it determines that they have not offended the anti-waiver statutes of federal or state law because they have not made any misrepresentation. The court finds that Plaintiffs, as buyers of Securities, are bound by the statements in the offering documents. Thus, because Plaintiffs have not alleged that Defendants failed to repurchase or substitute loans in their amended pleading, they have failed to state a claim upon which relief can be granted. Although Plaintiffs state in their surreply that Barclays has failed to take certain steps, this is argument, not a pleading, and does not relate to any of the claims alleged in the amended pleading.

All of Plaintiffs' claims rely upon their allegation that Defendants made a material misrepresentation or aided or abetted a misrepresentation. Because the court determines that Defendants have not made *any* misrepresentation, let alone a material misrepresentation, all of Plaintiffs' claims fail as a matter of law and that allegations set forth in Plaintiffs' amended complaint fail to set forth sufficient facts to state a claim to relief that is plausible on its face. Thus, this action must be dismissed. Accordingly, the court need not reach the other arguments raised in Defendants' motion to dismiss.

## IV. Conclusion

For the reasons stated herein, the court **denies** Plaintiffs' Motion to Remand or, in the Alternative, Motion for Discretionary Abstention and/or Equitable Remand and **grants** Defendants Barclays Bank PLC and Barclays Capital Inc.'s Motion to Dismiss. Accordingly, the court **dismisses** this action **with prejudice**.

**It is so ordered** this 30th day of September, 2008.

*[signature: Sam A. Lindsay]*

Sam A. Lindsay
United States District Judge